IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:15-CV-81492-KLR

TINA M. WHITE, individually,
BRILLIANT MINDS STRATEGIES, INC.,
JAMES LITTLES, JR., individually, and
JAMES JR. ENTERPRISE, INC.

                Plaintiffs,

vs.

SOUTHERN WASTE SYSTEMS, LLC,
SOUTHERN WASTE SYSTEMS, LTD., and the
SOLID WASTE AUTHORITY OF
PALM BEACH COUNTY,

                Defendants.

_____/

## THIRD AMENDED COMPLAINT

Plaintiffs TINA M. WHITE, individually ("**White**"), BRILLIANT MIND STRATEGIES, INC., ("**Brilliant Minds**"), JAMES LITTLES, JR., individually ("**Littles**"), JAMES JR. ENTERPRISE, INC. ("**Enterprises**") (collectively, "**Plaintiffs**") sue Defendants SOUTHERN WASTE SYSTEMS, LLC ("**SWS**"), SOUTHERN WASTE SYSTEMS, LTD ("**SWSL**") and the SOLID WASTE AUTHORITY OF PALM BEACH COUNTY ("**SWA**") (collectively, "**Defendants**") and allege:

## THE PARTIES

1.     White is an African-American female and Palm Beach County, Florida, resident.

2.     Brilliant Minds is White's Palm Beach County, Florida-based business.

3.     Brilliant Minds renders consulting and contract administrative services to companies bidding on public works and services contracts such as the one at issue in this lawsuit.

4.      Littles is an African-American male and Palm Beach County, Florida, resident.

5.      Enterprise is a Florida corporation whose principal place of business is in Palm Beach County, Florida.

6.      Enterprise provides vegetation pickup and truck towing services.

7.      Brilliant Minds and Enterprise are each a Certified Small Business Enterprise ("**SBE**").

8.      In Florida, an SBE is an independently owned and operated small business with a net worth of $5 million or less and 200 or fewer full-time, permanent employees. A business also qualifies if it is already certified by the federal government.

9.      SBEs must also be 51 percent owned, managed and controlled by either an African-American, Hispanic-American, Asian-American, Native-American, American woman or Florida veteran – all of whom must be United States citizens and permanent Florida residents.

10.     Defendant SWS is a Florida limited liability company whose principal address is in Davie, Florida.

11.     SWS conducts substantial business in Palm Beach County, Florida, as well as in other areas in Florida and the southeastern United States.

12.     SWS's web site (www.southernwastesystems.com) on January 4, 2016 describes SWS as being an industry leader "in the collection and processing of commercial and residential waste." It further describes SWS as "the largest privately owned recycler of Construction and Demolition material, Yard Waste, Recovered Materials and Mixed Waste in the Southeast."

13.     Defendant SWSL is a Florida limited partnership whose principal address is in Davie, Florida.

14.     At present, the relationship between SWS and SWSL is unclear. However,

according to records on file with the Florida Department of State Division of Corporations, each entity has an identical principal business address and mailing address, as well as the same registered agent: Charles Gusmano ("**Gusmano**").

15.    Upon information and belief, Gusmano is SWS and/or SWSL's Co-Founder, President, CEO, Managing Partner and Shareholder.

16.    Unless otherwise stated, references to "SWS" should be deemed inclusive of SWSL.

17.    Defendant SWA is a special district created pursuant to Chapter 2001-331, Laws of Florida.

18.    SWA's principal place of business is in Palm Beach County, Florida.

19.    SWA operates and/or conducts and/or engages in and/or carries on a business and/or business venture in Florida.

20.    SWA's web site (www.swa.org) on January 4, 2016 describes SWA as "the governmental agency responsible for providing an economical and environmentally conscious Integrated Solid Waste Management System for Palm Beach County, Florida. With approximately 400 employees, the SWA provides solid waste disposal and recycling services and programs to the county's 1.4 million residents and businesses. *The SWA also provides solid waste and recycling collection services to the residents and businesses in unincorporated Palm Beach County through private haulers under exclusive franchise agreements*" (emphasis added).

21.    The emphasized portion at the end of SWA's description herein reflects its role in the matters which gave rise to this lawsuit.

## JURISDICTION AND VENUE

22.     The allegations of ¶¶1-21 are incorporated herein.

23.     This Court has jurisdiction over the subject matter herein pursuant to 28 U.S.C. § 1343(4), which confers original jurisdiction upon this Court in a civil action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

24.     Jurisdiction is further proper pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court in a civil action under the Constitution or laws of the United States. Among the Plaintiffs' causes of action is one for impairment of contract rights due to racial discrimination, in violation of 42 U.S.C. § 1981.

25.     Venue is appropriate in the Southern District of Florida ("**District**") pursuant to 28 U.S.C. § 1391(b) and § 1391(c) because SWS is headquartered in and/or conducts business in the District.

26.     Venue is appropriate in the District pursuant to 28 U.S.C. § 1391(b) and § 1391(c) because SWSL is headquartered in and/or conducts business in the District.

27.     Venue is appropriate in the District pursuant to 28 U.S.C. § 1391(b) and § 1391(c) because SWA is headquartered in and/or conducts business in the District.

28.     Venue is further appropriate because the causes of action herein arose and occurred within the District.

## GENERAL ALLEGATIONS

29.     The allegations of ¶¶1-28 are incorporated herein.

30.     In October 2012 the SWA voted to approve Public Bid 14-201/SLB ("**Bid**") to

solicit competitive bids for solid waste collections and recoverable material services.

31.     On February 13, 2013, the Bid winner would be awarded a five-year contract running from October 1, 2013 through September 1, 2018 to provide services for Service Area Numbers 01, 02, 03, and/or 04 located in the unincorporated residential- and commercially-zoned areas of Palm Beach County.

32.     The Bid contract was collectively valued at approximately $205.7 million.

33.     As part of the Bid, the SWA's Governing Board approved reducing the minimum qualifying experiences for the Bid.

34.     Upon information and belief, this was the first time such a reduction occurred.

35.     The importance of the reduction is it afforded SWS its first opportunity to compete in bidding for the largest solid waste and recoverable material collections services contract issued by a government agency in Palm Beach County.

36.     The Bid had several requirements. These and various other terms were listed in several key documents, which included but were not necessarily limited to:

a.   A 17-page document entitled "SWA Solid Waste and Recycling Collection Services Bid No. 14-201/SLB November 13, 2012" ("**Bid Terms**"). The Bid Handout included the General Terms and Conditions for bidding. A copy is attached hereto and incorporated herein as **Exhibit A**;

b.   A 9-page document entitled "Solid Waste and Recycling Collection Services Bid No. 14-201/SLB Minimum Bidder Requirements for Pre-qualification" ("**Bid Requirements**"). A copy is attached hereto and incorporated herein as **Exhibit B**;

c.    A 49-page document entitled SWA's "Solid Waste and Recycling Collection

Franchise Agreement" ("**Franchise Agreement**"). A copy is attached hereto and incorporated herein as **Exhibit C**; and

d.   A 47-page document entitled SWA's "Solid Waste and Recycling Collection Franchise Agreement No. 14-205" ("**14-205 Agreement**"). A copy is attached hereto and incorporated herein as **Exhibit D**. The 14-205 Agreement was specific to Service Area Number 04.

37.   **Exhibits A to D** shall collectively be referred herein as the "**SWA Package**."

38.   The SWA set a goal of a minimum of 15 percent participation by SBEs in contracts and purchases such as the Bid. (Bid Handout at p. 6, § 25).

39.   Pertinent to this cause, applications for the Bid were required to include a statement regarding SBE and local business participation. Essentially, all bidders had to evidence their bids included at least 15 percent participation of SBEs, or include evidence of the "bona fide efforts" the bidder went through to obtain SBEs in its proposal ("**Requirement**").

40.   The SWA imposed strict compliance with the Requirement. Bid participants not meeting the Requirement were deemed non-responsive. (Bid Handout at p. 7).

41.   As part of SWS's bid, Gusman submitted a January 9, 2013 *Affidavit of SBE Participation* ("**Affidavit**") in which he swore under penalty of perjury and disqualification that SWS complied with the Requirement and its bid included 15 percent SBE participation.

42.   More particularly, SWS's Bid Application for Service Area 04 ("**Bid Application**") reflects in Schedule No. 1 a handwritten list of the entities which meet the Requirement. Two of the three entities are the Plaintiffs. A copy of SWS's Bid Application (which includes the above-referenced Affidavit and Schedule) is attached hereto and incorporated herein as **Exhibit E**.

43.     Schedule No. 1 further reflects Brilliant Minds was to be paid $125,500 annually to provide contract administration and contract purchases to SWS. This amounts to a total payment of $627,500 throughout the five-year-long Bid.

44.     Schedule No. 1 of the Bid Application also reflects Enterprise was to be paid $199,600 annually to provide vegetation pickup and towing services to SWS. This amounts to a total payment of $998,000 throughout the five-year-long Bid.

45.     As part of the Bid Application, each Plaintiff executed a letter of intent to document the services it would provide to SWS and payments it would receive from SWS pursuant to the Bid. The letters were included as part of Schedule No. 2 to the Bid Application. Copies of Schedule No. 2 / the letters are included as part of Exhibit E.

46.     Via a February 14, 2013 letter from SWA to Gusmano, SWS learned it was awarded Franchise Agreement No. 14-205 for Service Area No. 04.

47.     By virtue of that award, the Plaintiffs were thus similarly assured their respective aspects of Franchise Agreement No. 14-205 for Service Area No. 04 had been accepted.

48.     By virtue of that award, Plaintiffs became third-party beneficiaries of Franchise Agreement No. 14-205 for Service Area No. 04.

49.     The corresponding five-year contract for Service Area No. 04 was conservatively valued at $44.7 million.

50.     The 14-205 Agreement was executed by SWS Manager Charles Lomangino.

51.     Section 42(A) on pages 41-43 of the 14-205 Agreement addresses SBE participation.

52.     The SWA Package set forth numerous provisions addressing the inability to unilaterally change its terms, including but not limited to:

a.   Terms could only be modified by the SWA's Governing Board by amendment in a publicly-noticed meeting;

b.   14-205 Agreement, Section 42(A) on page 42: reflects the SBE Plan SWS submitted in its bid proposal is incorporated into the 14-205 Agreement, and notes documentary proof must be provided to reflect compliance with the SBE Plan.

c.   14-205 Agreement, Section 42(A) on page 42: obligates SWS to utilize the entities (the Plaintiffs) it listed in its SBE Plan, unless one of those entities becomes "unwilling or unable to perform." In such an instance, the SBE must be replaced with another local SBE unless the SWA authorizes another entity.

d.   14-205 Agreement, Section 42(A), page 42: reflects failure to make a "bona fide effort" to implement its SBE plan "shall be considered a failure to perform a material provision of the" 14-205 Agreement, "and shall be cause for debarment."

e.   14-205 Agreement, Section 37, page 40: The agreement cannot be modified "unless in writing and signed by the parties hereto. Such modification shall be in the form of an Amendment executed by both parties."

f.   Bid Terms, Section 25, page 8: "falsely representing that it will use the services or purchase commodities from an local SBE firm, and subsequently not doing so without demonstrating reasonable cause, or failure to comply with the local SBE requirements under Section 42 of the contract, shall be considered a breach of contract, and further, shall be cause for debarment, in accordance with the Authority's Purchasing Manual, Section 11- Paragraphs D or E." Section 11 prohibits Defendant SWS from bidding for SWA's next competitive solicitation anticipated to be in November 2017 for a five (5) years contract from October 1, 2018 through September 30, 2023.

g.   14-205 Agreement, Section 42(A)(1), page 43: "Contractor, in the absence of due cause, must use all of the certified local SBE suppliers and contractors listed by the Contractor in its response to the Invitation to Bid, unless the local SBE Contractor becomes unwilling or unable to perform. Contractor shall not replace a listed, local SBE until the Authority has confirmed that the listed, local SBE is unwilling or unable to perform. If the Authority agrees that the listed, local SBE is unwilling or unable to perform, the local SBE must be replaced with another certified local SBE supplier or contractor unless otherwise authorized by the Authority."

h.   14-205 Agreement, Section 42(A), page 42: "The Authority will require documentary proof semi-annually, acceptable to the Authority, of the

implementation, progress, and final outcome of the proposed local SBE plan. Contractor is required to make a Bona Fide Effort to implement the plan, to do business with local SBEs, and to achieve the fifteen (15%) percent goal."

i.  14-205 Agreement, Section 42(A), page 42: "Failure to make a Bona Fide Effort to implement Contractor's Plan, and to solicit, encourage, engage and pay local SBEs to provide goods and services related to the collection of solid waste and recovered materials in an effort to achieve the goal, shall be considered by the Authority as a failure to perform a material provision of the Contract, and further, shall be cause for debarment in-accordance with the Authority's Purchasing Manual, Section 11, Paragraph D or E."

j.  Bid Application, SWS's "SBE Bona Fide Efforts," Schedule 3, page 4: "SWS has signed binding SWA Schedule 2 with three (3) bona fide Palm Beach County SBE for participation effective October 2013-September 2018 if awarded (1) service area: 1. Henderson's Sani-Service System, Inc.: 6%. 2. James Jr. Enterprises, Inc. 6%. 3. Brilliant Minds Strategies, Inc. 3%. Total: 15%."

k.  14-205 Agreement, Section 42(A), page 43:  "Contractor shall not replace a listed local SBE, until the Authority has confirmed that the listed local SBE is unwilling or unable to perform."

l.  Bid Terms, Section 25, page 7: defines "Bona Fide Effort" and the level of effort required to demonstrate and document said effort. " 'Bona Fide Effort' shall mean the obligation to make every effort a similarly situated, prudent business entity operating under similar circumstances would make when acting in a determined manner to obtain the intended result by action or expenditure, which is not unreasonably disproportionate, or burdensome under the circumstances."

m.  Bid Terms, Section 12, page 4: SWA's Anti-Discrimination policy states it "is committed to assuring equal opportunity in the award of contracts, and, therefore complies with all laws prohibiting discrimination. The successful Bidder is prohibited from discriminating against any employee, applicant, or client because of race, color, religion, disability, sex, age, national origin, ancestry, marital status, sexual orientation, or gender identity or expression."

53.    At all times material and relevant, the Plaintiffs have continuously expressed to

Defendants' their willingness and abilities to perform the services reflected in the Bid

Application and as otherwise agreed.

54.     Notwithstanding the Plaintiffs' consistent willingness to perform, beginning in or around January 9, 2013 and continuing through and beyond the February 13, 2013 award of bid 14-205 and related execution of documents by the Defendants thereafter, Defendant SWS unilaterally attempted to alter the agreement between the parties by eliminating the Plaintiffs as the designated SBEs.

55.     SWS replaced the companies owned and operated by the SBE-compliant African-American Plaintiffs with a non-SBE firm owned by a white male, John Pata d/b/a Jet Hauling, Inc.

56.     SWS removed the Plaintiff SBEs without complying with the plainly worded contractual conditions detailed in the SWA Package in general and 14-205 Agreement in particular.

57.     Plaintiffs are two of the named, intended, third-party beneficiaries for the Bid.

58.     Defendant SWS failed to honor its representations, promises, covenants, sworn oaths and commitments to comply with the numerous SWA contract provisions relating to SBEs and the agreements in general.

59.     All conditions precedent to the filing of this lawsuit have occurred, or otherwise performed, waived or excused.

60.     Plaintiffs have been required to obtain counsel to pursue this claim and have agreed to pay them a reasonable fee for their services.

## COUNT I- BREACH OF CONTRACT, DEFENDANT SWS

61.     The allegations of ¶¶1-60 are realleged and incorporated herein.

62.     As evidenced by such things as, but not limited to, the documents in the Bid

Application otherwise detailed herein and the February 14, 2013 letter from the SWA to SWS's Gusmano, Defendant SWS and SWA entered into a written contract.

63.     As evidenced by such things as, but not limited to, the documents in the Bid Application otherwise detailed herein and the February 14, 2013 letter from the SWA to SWS's Gusmano, Defendant SWS entered into a written contract with Plaintiffs White and Brilliant Minds.

64.     Pursuant to that contract, Plaintiffs White and Brilliant Minds would render services as SBE contractors to SWS and be paid the sum of $627,500 over a five-year period, in accordance with SWA requirements.

65.     As evidenced by such things as, but not limited to, the documents in the Bid Application otherwise detailed herein and the February 14, 2013 letter from the SWA to SWS's Gusmano, Defendant SWS entered into a written contract with Plaintiffs Littles and Enterprise.

66.     Pursuant to that contract, Plaintiffs Littles and Enterprise would render services as SBE contractors to SWS and be paid the sum of $998,000 to provide vegetation pickup and truck towing services over a period of five years, in accordance with SWA requirements.

67.     The Defendant SWS breached the contract with the Plaintiffs by terminating the agreement illegally and in violation of its written terms.

68.     SWS's actions prevented the Plaintiffs from performing the services agreed upon and delineated in their contracts.

69.     The Plaintiffs were damaged because SWS's actions prevented the Plaintiffs from collecting the respective funds they were each entitled to pursuant to the written agreement.

**WHEREFORE,** Plaintiffs demand compensatory damages from SWS for said breach of contract and any such other relief this Court deems just and proper.

## COUNT II - BREACH OF CONTRACT, DEFENDANT SWA

70.    The allegations of ¶¶1-60 are realleged and incorporated herein.

71.    As evidenced by such things as, but not limited to, the documents in the Bid Application otherwise detailed herein and the February 14, 2013 letter from the SWA to SWS's Gusmano, Defendant SWS and SWA entered into a written contract.

72.    As evidenced by such things as, but not limited to, the documents in the Bid Application otherwise detailed herein and the February 14, 2013 letter from the SWA to SWS's Gusmano, Defendant SWS entered into a written contract with Plaintiffs White and Brilliant Minds.

73.    Pursuant to that contract, Plaintiffs White and Brilliant Minds would render services as SBE contractors to SWS and be paid the sum of $627,500 over a five-year period, in accordance with SWA requirements.

74.    As evidenced by such things as, but not limited to, the documents in the Bid Application otherwise detailed herein and the February 14, 2013 letter from the SWA to SWS's Gusmano, Defendant SWS entered into a written contract with Plaintiffs Littles and Enterprise.

75.    Pursuant to that contract, Plaintiffs Littles and Enterprise would render services as SBE contractors to SWS and be paid the sum of $998,000 to provide vegetation pickup and truck towing services over a period of five years, in accordance with SWA requirements.

76.    In the Plaintiffs' contracts, the SWA set forth numerous terms and conditions which bidders such as SWS had to follow. These terms and conditions were designed to purportedly protect SBEs such as the Plaintiffs.

77.     The Defendant SWA breached the contract by failing to enforce the terms and conditions of its SWA Package, and impose appropriate penalties and assert oversight on SWS.

78.     Had the SWA enforced its own terms and regulations relating to SWS's use of the Plaintiffs' as an SBE (as such terms are set forth in the SWA Package), SWS would not have been able to improperly terminate its relationship with the Plaintiffs and avoid its financial obligations to the Plaintiffs.

79.     Even after the Plaintiffs placed the SWA on notice of the breach of the agreement and the impermissible, purported modification of the agreement by SWS to eliminate the Plaintiff SBEs, the SWA still took no action.

80.     SWA's inaction caused the Plaintiffs to suffer damages in the form of the breached five-year agreements and loss of corresponding revenue.

**WHEREFORE,** Plaintiffs demand compensatory damages from SWA for said breach of contract and any such other relief this Court deems just and proper.

## COUNT III - BREACH OF CONTRACT TO THIRD PARTY BENEFICIARIES, AS TO SWS

81.     The allegations of ¶¶1-60 are realleged and incorporated herein.

82.     SWS decided to pursue the Bid.

83.     In order to qualify, SWA regulations required SWS needed to have a minimum 15 percent SBE participation.

84.     In requiring SBE participation, the SWA expressly acknowledged participating SBEs would be beneficiaries of winning bids to which the SBEs were involved.

85.     SWS met the 15 percent SBE participation requirement, in large part, by retaining

the Plaintiff SBEs to provide services to SWS.

86.     If a bidder prevailed, it naturally follows that the applicable SBEs who were part of that bid similarly prevailed, since they would now have work to perform (and thus compensation owed) in accordance with their respective responsibilities under the bid.

87.     SWS tendered and won a bid pursuant to Franchise Agreement No. 14-205 for Service Area No. 04.

88.     By virtue of that award, Plaintiffs became third-party beneficiaries of Franchise Agreement No. 14-205 for Service Area No. 04.

89.     In choosing the Plaintiffs, SWS knew the Plaintiffs would benefit if SWS was a successful bidder.

90.     Defendants SWA and SWS entered into an agreement which reflects intent on the part of both parties to provide and direct a primary benefit to the SBE participants in the agreement, such as the Plaintiff SBEs.

91.     In improperly terminating its agreement with the Plaintiffs, SWS deprived the Plaintiffs of the benefit of the revenue from the five-year contract known as Franchise Agreement No. 14-205 for Service Area No. 04.

92.     Plaintiffs thus entered into a written contract with SWS.

93.     Plaintiffs were third-party beneficiaries to that contract.

94.     Plaintiffs were harmed when SWS improperly and in violation of the SWA Package requirements terminated the Plaintiffs involvement in Franchise Agreement No. 14-205 for Service Area No. 04.

95.     Plaintiffs White and Brilliant Minds suffered damages in the form of the loss of $627,500 they would have received over the contract's five-year period.

96.     Plaintiffs Littles and Enterprise suffered damages in the form of the loss of $998,000 they would have received over the contract's five-year period.

**WHEREFORE,** Plaintiffs demand compensatory damages from SWS for breach of contract and for any such other relief this Court deems just and proper.

## COUNT IV - BREACH OF CONTRACT TO THIRD PARTY BENEFICIARIES, AS TO SWA

97.     The allegations of ¶¶1-60 are realleged and incorporated herein.

98.     In order to qualify for bidding, SWA regulations required SWS needed to have a minimum 15 percent SBE participation.

99.     In requiring SBE participation, the SWA expressly acknowledged participating SBEs would be beneficiaries of winning bids to which the SBEs were involved.

100.    SWS met the 15 percent SBE participation requirement, in large part, by retaining the Plaintiff SBEs to provide services to SWS.

101.    If a bidder prevailed, it naturally follows that the applicable SBEs who were part of that bid similarly prevailed, since they would now have work to perform (and thus compensation owed) in accordance with their respective responsibilities under the bid.

102.    SWS tendered and won a bid pursuant to Franchise Agreement No. 14-205 for Service Area No. 04.

103.    By virtue of that award, Plaintiffs became third-party beneficiaries of Franchise Agreement No. 14-205 for Service Area No. 04.

104.    But for the SWA's SBE threshold requirements, the Plaintiffs would not have been involved in the bidding.

105.    The SWA set forth bidding procedures as reflected in the SWA Package.

106.    The procedures were presumably designed to protect the SBEs from mistreatment and unfairness in contracting.

107.    In mandating use of SBEs, the SWA knew vendors such as the Plaintiffs would benefit if the bidder utilizing the SBE won its bid.

108.    Defendants SWA and SWS entered into an agreement which reflects intent on the part of both parties to provide and direct a primary benefit to the SBE participants in the agreement, such as the Plaintiff SBEs.

109.    Plaintiffs thus entered into a written contract with SWS.

110.    Plaintiffs were third-party beneficiaries to that contract.

111.    Plaintiffs were harmed when SWS improperly and in violation of the SWA Package requirements terminated the Plaintiffs involvement in Franchise Agreement No. 14-205 for Service Area No. 04.

112.    Plaintiffs were further harmed when the SWA failed to intervene and act in accordance with its own rules and regulations to correct SWS's improper actions.

113.    Plaintiffs White and Brilliant Minds suffered damages in the form of the loss of $627,500 they would have received over the contract's five-year period.

114.    Plaintiffs Littles and Enterprise suffered damages in the form of the loss of $998,000 they would have received over the contract's five-year period.

**WHEREFORE,** Plaintiffs demand compensatory damages from SWA for breach of contract and for any such other relief this Court deems just and proper.

### COUNT V – FRAUD IN THE INDUCEMENT TO CONTRACT AS TO SWS

115.    The allegations of ¶¶1-60 are realleged and incorporated herein.

116.     SWS decided to pursue the Bid.

117.    In pursuit of the Bid, SWS secured the Plaintiff SBEs so it could satisfy the 15 percent SBE participation threshold imposed on bidders by the SWA.

118.    In securing the Plaintiff SBEs, SWS led the Plaintiffs to believe if SWS was a successful bidder, the Plaintiffs would in turn be successful in procuring work pursuant to the Bid.

119.    In the case of Plaintiffs White and Brilliant Minds, that success amounts to the $627,500 they would have received over the contract's five-year period.

120.    In the case of Plaintiffs Littles and Enterprise, that success amounts to the $998,000 they would have received over the contract's five-year period.

121.    In leading the Plaintiffs to believe they would achieve success in the form of the value of their respective five-year contracts, SWS made a misrepresentation of a material fact.

122.    SWS knew or should have known of the statement's falsity.

123.    SWS intended the representation would induce the Plaintiffs to rely and act on it by participating as SBEs in SWS's bid proposal.

124.    The Plaintiffs each suffered injury in justifiable reliance on SWS's representation in the form of the lost value of the Plaintiffs' respective five-year contracts.

**WHEREFORE,** Plaintiffs demand compensatory damages from SWS and any such other relief this Court deems just and proper.

## COUNT VI – UNJUST ENRICHMENT AS TO SWS

125.    The allegations of ¶¶1-60 are realleged and incorporated herein.

126.    By virtue of their participation in the bidding, the Plaintiff SBEs afforded SWS the opportunity to achieve compliance with the SWA's bid requirements.

127.    Without said compliance, the SWS's bid would have been invalid because it failed to meet the SWA's threshold requirement for 15 percent SBE participation.

128.    The SWS would thus not have been awarded the 14-205 Agreement.

129.    Plaintiffs therefore conferred a benefit on SWS, and SWS knew it.

130.    SWS voluntarily accepted and retained the benefit, resulting in its being awarded the 14-205 Agreement.

131.    Allowing SWS to reap the benefit for having deceived the Plaintiffs would be inequitable unless SWS pays the Plaintiffs the value of the benefit – to wit, the value of the Plaintiffs' respective five-year contracts.

132.    Otherwise, SWS is unjustly enriched at the Plaintiffs' expense.

133.    Plaintiffs are entitled to damages as a result of SWS unjust enrichment, including the disgorgement of all monies unlawfully gained by SWS at Plaintiffs' expense.

**WHEREFORE,** Plaintiffs demand monetary damages against SWS for unjust enrichment and any such other relief this Court deems just and proper.


## COUNT VII- 42 USC 1981 CLAIM FOR IMPAIRMENT OF CONTRACT RIGHTS BASED UPON RACE

134.    The allegations of ¶¶1-60 are realleged and incorporated herein.

135.     This is an action for declaratory, injunctive and other equitable relief, and

compensatory and punitive damages against Defendants based on the Defendants' discrimination

against the Plaintiffs, in violation of 42 U.S.C. § 1981, which provides in pertinent part:

> (a)    "Statement of equal rights"
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b)    "Make and enforce contracts" defined
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c)    "Protection against impairment"
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

136.    White is an African-American female and a member of a protected class under Sections 1981 and 1983.

137.    Brilliant Minds is a racial identified African American Corporation and is a member of a protected class under Sections 1981 and 1983.

138.    Littles is an African-American male and a member of a protected class under Sections 1981 and 1983.

139.    Enterprise is a racially identified African American Corporation and a member of a protected class under Sections 1981 and 1983.

140.    Brilliant Minds and Enterprise are two of the named, intended, third-party beneficiaries for the Bid, based upon Defendant SWS's representations, promises, covenants, sworn oaths and commitments to comply with the contract provisions relating to the SWA's SBE

participation requirements.

141.   The Plaintiffs' race was a determinative, motivating factor in SWS's decision not to contract with the Plaintiffs, as the Bid terms were incorporated into the 14-205 Agreement which would have compensated them for the services the Plaintiffs rendered to SWS.

142.   The Plaintiffs' race and sex as an African American man and woman were motivating factors in the SWA's decision not to strictly adhere to the terms of the SWA Package that protect the Plaintiffs' rights and property interests under the agreement.

143.   The Plaintiffs' race and sex as an African American man and woman were motivating factors in the SWA's decision not to compel Defendant SWS to comply with the terms and conditions of the SWA Package as detailed herein.

144.   The Plaintiffs' race and sex as an African American man and woman were motivating factors in the SWA's decision not to force SWS to compensate the Plaintiffs for the services which were to be provided pursuant to the Bid Application and the 14-205 Agreement from October 1, 2013 through September 30, 2018 for Service Area No. 4.

WHEREFORE, Plaintiffs respectfully request this Court grant the following relief:

a.   Enter a judgment that Defendants' acts and practices as set forth herein are in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 of the laws of the United States;

b.   Enter preliminary and permanent relief enjoining the discriminatory conduct necessary to end both Defendants' discriminatory practices and prevent current and future harm to Plaintiffs and others;

c.   Award Plaintiffs compensatory damages for past and future economic and non-economic losses, including extreme emotional distress and mental anguish, impairment of the quality of life; and consequential loses; lost wages any lost benefits that resulted from the Defendants' discrimination;

d.   Award Plaintiffs exemplary and/or punitive damages against Defendant SWS;

e.      Award Plaintiffs with the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees;

f.      Grant Plaintiffs such other and further relief as this Court deems necessary and proper.

## JURY DEMAND

The Plaintiffs demand a trial by jury on all issues so triable in this action.

## CERTIFICATE OF SERVICE

I CERTIFY on January 5, 2016 the herein document was e-filed with the Clerk of Court via CM/ECF. I further certify a copy of the foregoing was furnished via ECF to Defendants' counsel Brian Joslyn, Esq., at bjoslyn@ciklinlubitz.com and swatts@ciklinlubitz.com.

LAW OFFICES OF GARY, WILLIAMS,
PARENTI, WATSON & GARY, PLLC
Attorneys for Plaintiff
221 S.E. Osceola Street
Stuart, FL 34994
**Telephone**: (772) 283-8260
**Facsimile**: (772) 220-3343
**E-mail**: larry@williegary.com

BY:      /s/ Larry A. Strauss
DONALD N. WATSON
Florida Bar No. 324442
VICTOR G. SWIFT
Florida Bar No. 71048
LARRY A. STRAUSS
Fla. Bar No. 0654671

LAW OFFICE OF ANDREW
DEGRAFFENREIDT, III
Attorney for Plaintiff
319 Clematis Street, Suite 602
West Palm Beach, FL 33401
**Telephone**: (561) 596-6420
**E-mail**: adegraffenreidt@gmail.com

BY:      /s/ Andrew DeGraffenreidt, III
ANDREW DEGRAFFENREIDT, III
Fla. Bar No. 0218121