## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO: 15-cv-81492-MIDDLEBROOKS

BRILLIANT MINDS STRATEGIES, INC. and
JAMES JR. ENTERPRISE, INC.,

       Plaintiffs,

v.

SOUTHERN WASTE SYSTEMS, LLC,
SOUTHERN WASTE SYSTEMS, LTD., and
SOLID WASTE AUTHORITY OF PALM
BEACH COUNTY,

       Defendants.

_____/

### ORDER GRANTING  DEFENDANT SOUTHERN WASTE AUTHORITY'S MOTION TO DISMISS

THIS CAUSE comes before the Court upon Defendant Southern Waste Authority of Palm Beach County's ("SWA") Motion to Dismiss Plaintiffs' Fourth Amended Complaint ("Motion"), filed on April 18, 2016.  (DE 47).  Plaintiffs Brilliant Minds Strategies, Inc. ("Brilliant Minds") and James Jr. Enterprise, Inc. ("Enterprise") filed a Response on May 21, 2016 (DE 62), to which SWA replied on June 3, 2016 (DE 65).  For reasons stated below, SWA's Motion is granted.

### I.     BACKGROUND

According to the Complaint, Brilliant Minds, whose president, Tina M. White, is African-American, renders consulting services to companies bidding on public services contracts.  (DE 41 ¶¶ 1-3).  Enterprise, whose president, James Little, Jr., is African-American, provides vegetation pickup services.  (DE 41 ¶¶ 4-6).  Defendants Southern Waste Systems, LLC and Southern Waste Systems, Ltd. (collectively, "SWS") provide recycling services. (DE 41 ¶ 9).

Plaintiffs allege that Charles Gusmano is Co-Founder, President, CEO, Managing Partner, and Shareholder of either or both SWS entities. (DE 41 ¶ 11). Defendant SWA, a special district created pursuant to Chapter 2001-331, Laws of Florida, provides waste and recycling collection services to Palm Beach County through private haulers under exclusive franchise agreements. (DE 41 ¶¶ 14-17).

Plaintiffs allege that in October 2012, SWA voted to approve Public Bid 14-201/SLB ("Bid") to solicit bids for an exclusive agreement to provide waste and recycling service to Palm Beach County for five years, starting on October 1, 2013. (DE 41 ¶¶ 27-29). The terms of the Bid and exclusive agreement are detailed in four documents (collectively, the "SWA Package"): (1) the "SWA Solid Waste and Recycling Collection Services Bid No. 14-201/SLB November 13, 2012" states general terms and conditions for bidding ("Bid Terms") (DE 41-1); (2) the "Solid Waste and Recycling Collection Services Bid No. 14-201/SLB Minimum Bidder Requirements for Pre-qualification" states bidder requirements ("Bidder Requirements") (DE 41-2); (3) the "Solid Waste and Recycling Collection Franchise Agreement" is the contract between SWA and the bid winner ("Franchise Agreement") (DE 41-3); and (4) the "Solid Waste and Recycling Collection Franchise Agreement No. 14-205" is the contract between SWA and the bid winner for Service Area 04 ("14-205 Agreement") (DE 41-4). (DE 41 ¶ 33).

According to the Complaint, the Bid Terms set a goal of 15% participation by local Small Business Enterprises ("SBEs") in each bidder's plan to provide services. (DE 41 ¶ 35; DE 41-1 at 6 ¶ 25). Bid Applications were required to include at least 15% SBE participation ("SBE Goal") or evidence of "bona fide efforts" to meet the SBE Goal (collectively, the "SBE Requirement"). (DE 41 ¶ 39). The Bid Terms, Franchise Agreement, and 14-205 Agreement list as a requirement to qualify as an SBE that a business have a business tax receipt issued prior to

the issuance of the invitation for bids on November 13, 2012. (DE 41-1 at 6 ¶ 25; DE 41-3 at 43; DE 41-4 at 42). Plaintiffs allege that both Brilliant Minds and Enterprise are SBEs. (DE 41 ¶ 38).

Plaintiffs allege that SWA reiterated its commitment to SBE inclusion in the SWA Board Workshop Meeting of October 30, 2012. (DE 41 ¶ 86; DE 42). The Workshop Minutes record that Mr. Pellowitz, Managing Director of the SWA, stated that "[b]idders will need to identify the companies they will be doing business with and they will not be able to replace them without Authority staff approval." (*Id.*). The Minutes show he also stated, "Once the SBEs are on the list provided to the Authority, it becomes part of the contract." (*Id.*). Finally, the Minutes record Pellowitz as stating, "Once a contract is awarded, staff will continue to track performance throughout the contract term." (*Id.*).[1]

Plaintiffs allege that Brilliant Minds and Enterprise are two of the three SBEs listed on SWS's Bid Application for Service Area 04 ("Bid Application"). (DE 41 ¶¶ 41-42; DE 41-5). The Bid Application states that SWS will pay Brilliant Minds $125,500 annually, to provide contract administration services, and Enterprise $199,600 annually, to provide vegetation pickup services. (DE 41 ¶¶ 43-44; DE 41-5). The Bid Application includes documentation of SWS's "bona fide efforts" to meet the SBE Goal, including by seeking an exception to the tax receipt deadline for Brilliant Minds and Enterprise, whose tax receipts were issued after the invitation for bids. (DE 41 ¶ 45; DE 41-5).

According to the Complaint, SWA awarded SWS the 14-205 Agreement to provide waste removal for Service Area 04. (DE 41 ¶ 46). The 14-205 Agreement expressly incorporates

---

[1] Mr. Pellowitz made these statements as part of a motion to "approve SWS's South Bay (Glades) Contract." The Complaint does not allege whether SWS's South Bay (Glades) Contract is the final Franchise Agreement, 14-205 Agreement, or some other agreement.

SWS's "submitted local SBE plan showing how it will assist the Authority in achieving this goal [of SBE inclusion] through local SBE supplier and subcontractor participation or any other method." (DE 41-5, section 42(A)). The 14-205 Agreement further states that "[f]ailure to make a Bona Fide Effort to implement Contractor's plan . . . shall be considered by the Authority as a failure to perform a material provision of the Contract, and further, shall be cause for disbarment." (*Id.*). "Bona Fide Effort" includes the following requirement:

> Contractor, in the absence of due cause, must use all of the certified local SBE suppliers and contractors listed by the Contractor in its response to the Invitation to Bid, unless the local SBE contractor becomes unwilling or unable to perform. Contractor shall not replace a listed, local SBE until the Authority has confirmed that the listed, local SBE is unwilling or unable to perform.

("Approval Requirement") (*Id.*).

Plaintiffs allege that despite their willingness and ability to perform, SWS replaced them with a non-SBE firm, Jet Hauling, Inc., which is owned by a white male. (DE 41 ¶¶ 53-55). According to Plaintiffs, SWS did not obtain SWA approval before terminating Plaintiffs, as allegedly required by the 14-205 Agreement. (DE 41 ¶ 56). Plaintiffs allege that despite SWA's expressed commitment to SBEs and its authority to enforce the 14-205 Agreement, SWA took no action upon SWS's termination of Plaintiffs. (DE 41 ¶¶ 61-63, 88, 95). Plaintiffs conclude that they would not have been terminated if SWA had enforced the SBE and Approval Requirements, and that their termination caused them harm in the amount of the total revenue they were due to receive under the five-year contract. (DE 41 ¶¶ 92, 94).

On April 1, 2016, Plaintiffs filed the Fourth Amended Complaint against SWS and SWA. (DE 41). Against SWA, Plaintiffs allege: (1) negligence under Florida common law, (2) breach of contract under Florida common law, (3) fraud in the inducement under Florida common law,

and (4) impairment of contract rights under 42 U.S.C. § 1981.  SWA moves to dismiss all four

Counts against it.

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint.

*See* Fed. R. Civ. P. 12(b)(6).  In assessing the legal sufficiency of a complaint's allegations, the

Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*,  550

U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  That is, the complaint "must . .

. contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting

*Twombly*, 550 U.S. at 570).  "Dismissal is therefore permitted when on the basis of a dispositive

issue of law, no construction of the factual allegations will support the cause of action."  *Glover*

*v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing

*Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

When reviewing a motion to dismiss, a court must construe plaintiff's complaint in the

light most favorable to plaintiff and take the factual allegations stated therein as true. *See*

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002);

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

However, pleadings that "are no more than conclusions, are not entitled to the assumption of

truth.   While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations." *Iqbal*, 556 U.S. at 678; *see also Sinaltrainal v. Coca-Cola*

*Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (stating that an unwarranted deduction of fact is not

considered true for purpose of determining whether a claim is legally sufficient).

Generally, a plaintiff is not required to detail all the facts upon which he bases his claim. Fed. R. Civ. P. 8(a)(2). Rather, Rule 8(a)(2) requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds. *Twombly*, 550 U.S. at 555-56. However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556 n.3. Plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). "Factual allegations must be enough to raise [plaintiff's] right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Id.*

In addition to the Rule 8(a) plausibility pleading requirement, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal citations and quotations omitted).

## III.   DISCUSSION

### a.   Count IV – Breach of Contract, Third Party Beneficiary

Plaintiffs allege that SWA breached its contractual duty to enforce SWS's compliance with the Approval and SBE Requirements. To enforce a contract as a third party beneficiary, Plaintiffs must allege: (1) the parties to the contract intended to benefit a particular class, (2)

6

Plaintiffs are members of that class, and (3) the contract has been violated by a breach of those provisions intended to benefit the third party class. *See Technicable Video Sys., Inc. v. Americable of Greater Miami, Ltd.*, 479 So. 2d 810, 813 (Fla. 3d DCA 1985).

SWA argues that the 14-205 Agreement clearly express the parties' intent to primarily and directly benefit SBEs. "[T]o sustain an action instigated by a party beneficiary, the plaintiff must plead the contract which was expressly for his benefit and one under which it clearly appears that he was a beneficiary." *Weimar v. Yacht Club Point Estates, Inc.*, 223 So. 2d 100, 102 (Fla. 4th DCA 1969). In *Technicable*, the court held that a provision in a government contract requiring the contractor to make "reasonable and good faith effort" to include minority businesses as 20% of its total contract work was "intended to directly benefit" minority businesses, such that they were third party beneficiaries under the contract. *Technicable*, 479 So. 2d at 813. The court reasoned that "[t]he fact that the contract as a whole was intended to benefit city residents by providing them with cable T.V. does not negate the lucid expression of an intent to benefit MBE's by allowing them a hand in setting up and maintaining the system." *Id.* at 812-13. Plaintiffs allege that the 14-205 Agreement between SWS and SWA requires SWS to make "bona fide efforts" to award 15% of its total contract work to SBEs. Plaintiffs allege that the 14-205 Agreement incorporates SWS's "local SBE plan showing how it will assist the Authority in achieving this goal through local SBE supplier and subcontractor participation or any other method." Also, Plaintiffs allege that the 14-205 Agreement considers "[f]ailure to make a Bona Fide Effort to implement Contractor's plan . . . a failure to perform a material provision of the Contract, and . . . cause for disbarment." These provisions express a clear intent to directly benefit SBEs, and accordingly, Plaintiffs sufficiently allege that SBEs are third party beneficiaries to the 14-205 Agreement between SWS and SWA.

SWA argues that the exhibits to the Complaint contradict Plaintiffs' allegations that they are members of the class of SBEs.[2]  In support, SWA points to SWS's Bid Application, which acknowledges that Plaintiffs did not receive their tax receipts from the County before the invitation for Bids was issued, as required to qualify as an SBE under the 14-205 Agreement. However, even if Plaintiffs do not fall within the SBE class, the 14-205 Agreement expresses a clear intent to benefit the subcontractors included on SWS's Bid Application, including by incorporating the SBE plan into the Agreement as a material provision.  Accordingly, Plaintiffs' allegations establish that they are third party beneficiaries under the 14-205 Agreement.

Finally, SWA argues that Plaintiffs cannot bring a third party breach of contract claim against SWA for failing to enforce SWS's compliance with the SBE and Approval Requirements in the 14-205 Agreement.  "No third-party claim lies [] against a party which [] is merely the promisee of the contract relied upon."  *Riverview Condo. Corp. v. Campagna Const. Co.*, 406 So. 2d 101, 102 (Fla. 3d DCA 1981).  Rather, "[i]t is the undertaking on the part of the promisor, as a consideration to the promisee, to benefit the third person, that gives rise to a cause of action by the beneficiary against the promisor, resting upon the contract itself."  *Bilic v. New Fairway Investments of Florida, Inc.*, 593 So. 2d 530, 531 (Fla. 5th DCA 1992) (quoting *Marianna Lime Prod. Co. v. McKay*, 147 So. 264, 265 (1933)).  In *Bilic*, a third party sued to enforce an agreement, in which the bank conditioned its loan to the third party's debtor on the debtor's repaying the third party with advances made by the bank.  *Bilic*, 593 So. 2d at 531.  The third party brought a breach of contract claim against the bank for failure to make the advances, which the debtor was contractually required to pass on to the third party.  *Id.*  The court held that the third party could not sue the bank for breach of contract because it was the debtor, not the bank,

---

[2] "[W]hen [] exhibits contradict the general and conclusory allegations of the pleading, [] exhibits govern."  *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

who undertook the promise that benefitted the third party, specifically, agreeing to pass along advances to the third party as a condition of the loan. *Id.*

Here, SWS is the promisor, whose alleged promise not to terminate Plaintiffs without SWA approval, in consideration for receiving the exclusive contract for Service Area 04, benefits Plaintiffs.[3]  Likewise, the provision stating that "[f]ailure to make a Bona Fide Effort to implement Contractor's plan . . . shall be considered a failure to perform a material provision of the Contract, and . . . cause for disbarment" imposes a promise on the part of SWS to implement its SBE plan for the benefit of Plaintiffs.  Just like the bank's promise to pay advances in *Bilic* impacted the third party beneficiaries, but was not the promise under which their rights inured, so too SWA's authority to enforce SWS's promises impacts Plaintiffs, but is not the underlying promise that inures to their benefit.  Accordingly, Count IV of Plaintiffs' Complaint is dismissed for failure to state a claim under a third party beneficiary theory of contract law.  Because Plaintiff's third party beneficiary rights are based on SWS's promise, Plaintiff cannot correct this deficiency, and therefore dismissal is with prejudice.

### b.  Count II – Negligence

Plaintiffs allege that SWA breached a duty to Plaintiffs by failing to enforce SWS's compliance with the SBE and Approval Requirements of the 14-205 Agreement.  A negligence cause of action has four elements: (1) a duty requiring defendant to conform to a certain standard of conduct, (2) defendant's failure to conform to that standard, (3) "[a] reasonably close causal connection between the [nonconforming] conduct and the resulting injury," and (4) "actual loss or damage."  *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003).

---

[3] SWA does not dispute, and therefore the Court assumes for the purpose of SWA's Motion, that SWS's termination of Plaintiffs breached the Approval Requirement.

SWA argues that it has no duty to Plaintiffs under the 14-205 Agreement. "[A] breach of contract, alone, cannot constitute a cause of action in tort . . . ."[4] *Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986). "[I]t is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence." *Id.* (citing *Southern Bell Telephone and Telegraph Co. v. Hanft,* 436 So. 2d 40 (Fla. 1983)); *see also Lewis v. Guthartz*, 428 So. 2d 222, 224 (Fla. 1982). In *Lewis*, the Florida Supreme Court held that tenants could not bring a tort claim against their landlord for charging them excessive rent in breach of the landlord's agreement with the Federal Housing Authority because the tort claim was not "distinguishable from or independent of [the landlord's] breach of contract." *Lewis*, 428 So. 2d at 223-24.   The tenants' allegations that the landlord's breach was intentional, willful, and outrageous were insufficient to plead a tort when the underlying wrongful conduct was the landlord's breach of contract. *Id.* at 224; *see also Elec. Sec. Sys.*, 482 So. 2d at 519 ("A breach of contract cannot be converted into a tort merely by allegations of malice.").   Here, to the extent that Plaintiffs allege that SWA negligently failed to exercise its authority under the 14-205 Agreement, Plaintiffs fail to allege conduct that is distinguishable from a breach of contract claim.

In response, Plaintiffs point to allegations in the Complaint that SWA's duty arose independent of its contractual obligations, from its regulatory position, its representations in public meetings, and its correspondence with potential contractors.   SWA replies that even if Plaintiffs allege a duty, sovereign immunity bars recovery in tort actions for purely economic

---

[4] Although *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.* held that the economic loss rule only bars tort actions in the products liability context, its holding does not alter the common law rule that a tort claim must be independent of any breach of contract claim. *See Tiara Condo. Ass'n*, 110 So. 3d 399, 408 (Fla. 2013) (Pariente, J., concurring) ("[T]o bring a valid tort claim, a party [] must demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim.").

damages against the state, its agencies, and its subdivisions.[5]  Sovereign immunity protects the

states from suit in their own courts. *Alden v. Maine,* 527 U.S. 706, 713 (1999).  Fla. Stat. §

768.28 waives Florida's sovereign immunity, but only for "injury or loss of property, personal

injury, or death."

The Complaint alleges that SWA is a special district created pursuant to Chapter 2001-

331, Laws of Florida, which grants the SWA the power to levy ad valorem taxes.  As a special

district with the power to levy ad valorem taxes, SWA is an independent establishment of the

state, entitled to sovereign immunity. *See Eldred v. N. Broward Hosp. Dist.*, 498 So. 2d 911, 914

(Fla. 1986).  Therefore, to the extent the Complaint alleges a tort claim, independent of contract,[6]

for purely economic damages, § 768.28 does not waive sovereign immunity.  Accordingly,

SWA's Motion to Dismiss Count II is granted.[7]  As Plaintiff cannot correct this deficiency,

which is based on sovereign immunity, dismissal is with prejudice.

---

[5] Plaintiffs "recognize sovereign immunity may reflect a defense to and/or limitation on the damages awardable in their cause of action," but argue that SWA cannot base a motion to dismiss on an affirmative defense.  "Generally, the existence of an affirmative defense will not support a motion to dismiss." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *on reh'g,* 764 F.2d 1400 (11th Cir. 1985). "Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Id.*

[6] Because Plaintiffs allege that SWA's duty arises independent of contract, the Court need not address the extent to which a government entity waives sovereign immunity by entering into an express, written contract. *See Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984) ("[W]here the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract.").

[7] SWA also argues that Plaintiffs fail to plead compliance with the pre-suit notice requirements of Fla. Stat. § 768.28(6)(a), which states that "[a]n action may not be instituted on a [tort] claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also . . . presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing."  "[A]bsent an allegation of departmental notice, [a] complaint fails to state a cause of action." *Menendez v. N. Broward Hosp. Dist.*, 537 So. 2d 89, 90 (Fla. 1988).  "[T]he action should be dismissed with leave to

### c.  Count VI – Fraud in the Inducement

Plaintiffs allege that SWA induced Plaintiffs to expend time and energy in the Bid application process by representing that there were viable business opportunities that SBEs could obtain, thereby leading Plaintiffs to believe "they would achieve success as SBE participants in the form of the value of their respective five-year contracts."   The elements of fraud in the inducement are: "(1) [a] misrepresentation of a material fact; (2) [t]he representor of the misrepresentation, knew or should have known of the statement's falsity; (3) [i]ntent by the representor that the representation will induce another to rely and act on it; and (4) [r]esulting injury to the party acting in justifiable reliance on the representation.   *Lou Bachrodt Chevrolet, Inc. v. Savage*, 570 So. 2d 306, 308 (Fla. 4th DCA 1990).

SWA argues that sovereign immunity also bars this tort claim, for which Plaintiffs allege purely economic damages.   "[F]raud in the inducement causing only economic loss does not fit within any of those categories of injury or loss enumerated in [§ 768.28(6),]" for which the state has waived sovereign immunity.   *See County of Brevard v. Miorelli Eng'g*, 677 So. 2d 32, 34 (Fla. 5th DCA 1996), *quashed and remanded on other grounds in* 703 So. 2d 1049 (Fla. 1997). Accordingly, for the reasons articulate in Section b, SWA's Motion to Dismiss Count VI based on sovereign immunity is granted.[8]   As Plaintiff cannot correct this deficiency, which is based on sovereign immunity, dismissal is with prejudice.

---

amend," unless "the time to comply with the precondition has expired."   *City of Coconut Creek v. City of Deerfield Beach*, 840 So. 2d 389, 393 (Fla. 4th DCA 2003).   While it is unclear whether three years have passed since the date Plaintiffs' negligence claim accrued, there is no need to resolve whether to grant Plaintiffs leave to amend the notice deficiency because the Court dismisses Count II on other grounds.

[8] Because the Court finds that sovereign immunity bars Plaintiffs' claim, the Court need not address: (1) whether Plaintiffs allege a false statement, and (2) whether the time to comply with the notice precondition has expired, as discussed in more detail in Section b.

12

### d. Count IX – Impairment of Contract Rights under 42 U.S.C. § 1981

Plaintiffs allege SWA impaired their contractual right to perform under the SWA Package and the 14-205 Agreement, by refusing to enforce SWS's compliance with the Approval Requirement, thereby allowing SWS to terminate Plaintiffs in favor of a white-owned company. "The elements of a cause of action under 42 U.S.C. § 1981 are (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute."[9] *Kinnon v. Arcoub, Gopman & Associates, Inc.*, 490 F.3d 886, 891 (11th Cir. 2007) (internal quotations and citation omitted). The second element requires that Plaintiffs allege purposeful discrimination. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389 (1982). "Proof of a *prima facie* case does not require direct proof of intent to discriminate; evidence of disparate treatment from which the trier of fact may infer discrimination is sufficient." *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1562 (11th Cir. 1987).

SWA argues that Plaintiffs' conclusory allegations of purposeful discrimination cannot support a claim under *Twombly* and *Iqbal*. Plaintiffs respond that their allegations meet the standard for a motion to dismiss set forth in *Swierkiewicz v. Sorema, N.A.*, in which the Supreme Court held that an employment discrimination complaint need not contain the specific facts necessary to establish a *prima facie* case under the *McDonnell Douglas* framework. 534 U.S. 506, 510-511 (2002). However, "while *Swierkiewicz* made clear that pleading a *McDonnell Douglas prima facie* case was not necessary to survive a motion to dismiss, it did not even remotely suggest that a pleading could survive dismissal when it consisted of only the barest of

---

[9] The enumerated activities include the right to "make and enforce contracts," which is defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981.

conclusory allegations without notice of the factual grounds on which they purport to be based."[10] *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1270-71 (11th Cir. 2004).

Here, the Complaint alleges that the race and sex of Plaintiffs' principals were "motivating factors" in SWA's decision not to take action when SWS terminated Plaintiffs.[11] (DE 41 ¶¶ 209-211).  This allegation fails to allege sufficient facts to "enable the defendant to focus on [the discriminatory] practices in order to respond to the charges and assure the court that the claim has some basis in fact."  *See Jackson v. BellSouth Telecommunications, Inc.*, 181 F. Supp. 2d 1345, 1354 (S.D. Fla. 2001), *aff'd sub nom. Jackson v. BellSouth Telecommunications*, 372 F.3d 1250 (11th Cir. 2004) (holding plaintiffs failed to state a claim under § 1981 based on allegations that defendants' actions "were motivated solely by the race of the Plaintiffs"; that the defendants, "because the Plaintiffs are African Americans, presumed that the Plaintiffs were not smart enough or sophisticated enough to inquire or insist on disclosure of the settlement terms and amounts;" and that "the treatment of the [p]laintiffs in this case by the [d]efendants differs markedly from their treatment of plaintiffs in other cases litigated by these attorneys in the past.").

In addition to their direct allegations of racially discriminatory intent, Plaintiffs allege "staff members of the SWA addressed issues and concerns regarding contracting rights for non-minority bidders when receiving written and verbal inquiries. . . ," "[y]et when requested and relied upon to enforce or address contract requirements not being met involving minority

---

[10] The Eleventh Circuit has noted that the *McDonnell Douglas* framework does not apply to non-employment discrimination under § 1981. *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1235 (11th Cir. 2000).  However, in *Jackson*, the Eleventh Circuit analyzes the *Swierkiewicz* standard, which was developed in an employment discrimination case, in the context of a non-employment § 1981 claim. *See Jackson*, 372 F.3d at 1270-71.

[11] SWA does not address whether a § 1981 claim can be based on allegations of gender discrimination.

vendors such as Plaintiffs, the staff and SWA failed to act – to wit, failed to enforce [sic] SWS to comply with the SWA requirements regarding termination of SBEs such as Plaintiffs." (DE 41 ¶ 207-208).    "When comparing similarly situated individuals to raise an inference of discriminatory motivation, the individuals must be similarly situated in all relevant respects besides race, since different treatment of *dissimilarly* situated persons does not violate civil rights laws." *Jackson*, 372 F.3d at 1273; *see also Allen v. CLP Corp.*, 460 F. App'x 845, 847 (11th Cir. 2012) (holding plaintiff failed to show that white males, who, unlike plaintiff, were not asked to leave restaurant after altercation with plaintiff, were similarly situated because they were a larger group, who had not yet dined).

Here, Plaintiffs do not allege that non-minority companies raised the same "issues and concerns regarding contracting rights" as Plaintiffs.   Specifically, Plaintiffs do not allege that SWA compelled other contractors to comply with the SBE Approval Requirement when those contractors terminated non-minority SBEs.   Accordingly, Plaintiffs' "conclusory, generalized, and non-specific claims of disparate treatment" cannot withstand SWA's Motion to Dismiss.[12] *See id.*   Accordingly SWA's Motion to Dismiss Count IX is granted.[13]   Dismissal is without prejudice.

It is hereby

---

[12] In their Response, Plaintiffs point to their allegations that SWS terminated Plaintiffs for a white-owned company, despite Plaintiffs' being qualified, able, and willing to perform, as sufficient to plead disparate treatment.   However, the Complaint does not allege that SWA participated in SWS's decision to terminate Plaintiffs.   In fact, the Complaint alleges the opposite – that SWA did not approve SWS's decision to terminate Plaintiffs.   Accordingly, these allegations, while perhaps relevant to SWS's intent, do not permit an inference of discriminatory intent *as to SWA*. [12]

[13] The Court need not address SWA's alternative grounds for dismissal: that Plaintiffs fail to identify an impaired contractual relationship, under which they have rights.

15

**ORDERED AND ADJUDGED** that Defendant SWA's Motion to Dismiss (DE 47) is **GRANTED.**   Counts II, IV, and VI of the Fourth Amended Complaint (DE 41) are **DISMISSED with prejudice.**  Count IX is **DISMISSED without prejudice.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this ⁊ day of December, 2016.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:     Counsel of Record

16